bedience to written orders and instructions; that thereupon he was given a hearing, his examination was reduced to writing, and he was informed by the commissioner that he should discharge him for neglecting to carry out written instructions, whereupon he was discharged. He did not claim the protection of said section 21 until three months after his discharge, and he now says that he did not find out until the lapse of said three months that he was a veteran fireman. Had he asserted the fact, the commissioner would undoubtedly have put the verbal charges into writing, and after due notice would have proceeded with a hearing which would have terminated precisely as the informal hearing terminated. Adequate reason for removal was disclosed by the examination of the relator, and he may have thought that his case would not be improved by a hearing on formal charges. But, whatever his reason may have been, the time to assert the right was when he knew the commissioner was proceeding with an examination for the purpose of determining whether he would' remove him. He could relinquish the right to formal charges, and his silence at such a time constituted such relinquishment. People ex rel. Brady v. Brookfield, 6 App. Div. 445, 39 N. Y. Supp. 677. The case of Stutzbach v. Coler, 168 N. Y. 416, 61 N. E. 697, is not in point, because the removal of the relator in that case was consummated before he had any notice of it. He was given no opportunity to claim the protection of the statute, while in the case at bar an informal hearing was had, and, if the relator desired it to be more formal, he should have claimed the right then. His excuse for not doing so, to the effect that he did not discover until three months afterwards, a fact which, if it were a fact, must have been within his knowledge at the time, does not satisfy us.

The order should be reversed.

Order reversed, with $50 costs and disbursements, and writ dismissed. All concur, except HOOKER, J., who dissents.

---

(121 App. Div. 470.)

### In re THOMPSON'S WILL.

(Supreme Court, Appellate Division, Second Department. October 4, 1907.)

1. WILLS—EXECUTION—UNDUE INFLUENCE—EVIDENCE.

  The mere fact that the draftsman of a will is made executor or trustee does not raise any presumption that he practiced undue influence on testator.

2. SAME—CONTEST—SUFFICIENCY OF EVIDENCE.

  Evidence examined, and *held* insufficient to show that the execution of a will was obtained by undue influence.

  [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 421–437.]

Appeal from Surrogate's Court, Kings County.

In the matter of the probate of the last will and testament of Edwin E. Thompson, deceased. From a decree (100 N. Y. Supp. 492) denying probate, proponent appeals. Reversed.

Argued before HIRSCHBERG, P. J., and HOOKER, GAYNOR, RICH, and MILLER, JJ.

Ira Jay Dutton, for appellant.

R. M. Cahoone, for respondents.

MILLER, J.   This is an appeal from a decree of the Surrogate's Court of Kings county denying probate to the will of Edwin E. Thompson, who died September 14, 1904, leaving him surviving a widow, a son, two sisters, and a brother.   The will was made April 14, 1903, the first codicil July 16, 1903, and the second codicil September 13, 1904.   So far as appears from the evidence, the only property of any value possessed by the testator was a life insurance policy for $3,000, payable to his brother, John E. Thompson, as trustee.   The will gives the proceeds of said policy to said John E. Thompson in trust, to pay the income of one-third to the widow and of two-thirds to the son, principal to be used, if necessary, to provide for their support, with remainders over to the survivor in case of the death of either.   The will also contains provisions giving all his personal property (the life insurance policy was evidently not included in this) and all his interest in the real estate of the copartnership, consisting of himself and his said brother, to his widow, and another provision devising all other real estate to said brother in trust for his son, remainder to the son absolutely upon his arriving at the age of 25 years, or, in the discretion of the trustee, at the age of 21.   The first codicil provides that in the event of the death of both widow and son the insurance moneys are given to the two sisters, in case they are single; otherwise, to the said brother.   The third codicil gives to said brother the testator's interest in certain real estate owned by said copartnership, and recites that upon his retiring from said copartnership his brother succeeded to his interest in all the copartnership property.   It appears that said copartnership terminated January 1, 1904, and the recital in said codicil is in accordance with the agreement of dissolution made January 23, 1904.   The will appointed his said brother executor.

I have only attempted to give such a general survey of the will as is necessary to understand the question presented on this appeal. It is undisputed that the testator possessed testamentary capacity, and the due execution of the will was established; but the contestant, although no evidence whatever was offered in that behalf, contends that the instrument offered for probate was not the will of the decedent, but was the result of undue influence practiced upon him by his said brother, and the surrogate has held, upon the authority of Marx v. McGlynn, 88 N. Y. 358, that there was presumption of undue influence which the proponent had failed to overcome.   The learned surrogate seems also to have assumed that the testator could not understand the provisions of the will, and that his brother, who had been admitted to practice law in the state of Iowa, had so drawn it as to conceal in a multitude of words its real purpose.   It is true that a few simple sentences would have sufficed to express the intention of the testator; but the undisputed evidence shows that the involved and unnecessary sentences in this will were as much the work of the testator as the draftsman.   The testator was not, as appears to have been assumed, an ignorant, unlettered man.   It is undisputed that he had pursued part, if not all, of a college course, and, while the surrogate

appears to have been impressed by the belief that the testator could not understand the effect of the legal terms and phrases used in the will, an inspection of that document shows it to have been the work, not of a lawyer, but of a layman. The undisputed evidence is that said brother dictated the will to a stenographer in the presence of the testator from notes prepared by the latter; that each paragraph was discussed as dictated, and changed as suggested by the testator; that after the stenographic notes were typewritten the testator took the typewritten pages, kept them some weeks, and returned them with changes made in his own handwriting, whereupon the will was again dictated to the stenographer by the said brother in the presence of the testator. The subscribing witnesses, three in number, were well acquainted with the testator, and they all testify to facts surrounding the execution of the will tending to show that it was the free and voluntary act of the testator.

The mere fact that the draftsman of a will is made executor or a trustee is not sufficient to raise any presumption that he practiced undue influence, and neither the case of Marx v. McGlynn, supra, nor any other within our research, holds that it is; and we do not deem it necessary to cite authority upon the proposition that no such presumption can arise from a transaction so natural and customary. It might seem to us unwise to tie up in a trust so small an estate; but we are not making this will, and the testator provided that the principal could be used. Had there been a diversion of any portion of the testator's estate from the natural objects of his bounty, a different question might arise. The second codicil might be open to question, if it did not appear without dispute that it really disposes of no interest which the testator had, because by the agreement of dissolution, made some months before the execution of said codicil, it was agreed that the brother should succeed to all of the copartnership property; and it is also uncontradicted that the testator had visited the real property in question and had reported that in his opinion it was not worth the taxes levied upon it.

The decree must be reversed.

Decree of the Surrogate's Court of Kings county reversed, and will admitted to probate, with costs to the appellant payable out of the estate. All concur.